# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

GREGORY STRUNK,

                    Petitioner,

v.

J. GASTELO, Warden,

                   Respondent.

Case No.: 18-cv-1679-H-JLB

**ORDER:**
**(1) DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS; AND**

**[Doc. No. 15]**

**(2) DENYING CERTIFICATE OF APPEALABILITY**

On March 11, 2019, Gregory Strunk ("Petitioner"), a state prisoner proceeding *pro se*, filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. No. 15.) On May 9, 2019, Respondent filed an answer to the petition (Doc. No. 19), and on September 9, 2019, Petitioner filed a traverse. (Doc. No. 28.) For the reasons below, the Court denies the amended petition for a writ of habeas corpus, denies Petitioner's request for an evidentiary hearing, and denies a certificate of appealability.

/ / /

/ / /

/ / /

# **Background**

Below are the facts as recounted by the state appellate court[1]:

## A. March 27, 2014 Incident

Counts 7 through 13 of the amended information arose out of an incident taking place around 12:40 a.m. on March 27, 2014, when Strunk was driving his truck to take his daughter S. (age 13) and her friend Jacqueline (age 14) to a Vista convenience store. He was going about 5 to 10 mph and about to turn into the store's parking lot when he made an illegal turn that cut off a marked patrol car being driven in the right hand lane by San Diego County Deputy Sheriff Marco Weston. Weston braked hard to avoid a collision, and immediately made a traffic stop of Strunk's vehicle in the parking lot. No one was hurt.

As Deputy Weston was talking to Strunk, he noticed that Strunk looked disheveled, had red and watery eyes with constricted pupils, and had obvious track marks, abscesses and scabs on his hands and arms. Because Weston thought that Strunk might be driving under the influence, he asked him if he had had anything to drink that night, learning that Strunk drank a Margarita a few hours earlier. He put Strunk through several tests for alcohol or drug impairment, some of which showed some impairment while others did not.

Deputy Weston arrested Strunk and searched him, finding $742 in cash in his front pocket. Searching the truck, Weston found there were two syringe caps and a metal spoon coated with a heroin like substance on the passenger side floorboard. A canine search team was brought in and found a pouch under the truck's toolbox that contained several new and used syringes, one of which looked like it had liquid heroin in it, and some spoons, a scale, and packages containing a total of 10.33 grams of methamphetamine and .47 grams of heroin. At the jail, Strunk told a social worker that he kept drugs away from his children by storing them in his truck. Strunk was charged and released.

---

[1]   This Court presumes state court findings of fact to be correct, but Petitioner may rebut the presumption with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); see also Parle v. Fraley, 506 U.S. 20, 35-36 (1992) ("[Q]uestions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness accorded state court factual findings . . . .").

## B. July 10, 2014 Incident

A few months later, in the mid-afternoon of July 10, 2014, Strunk was driving his Toyota truck eastbound on Highway 78 near Vista, accompanied by his minor daughter S., her friend Jacqueline, their friend Jasmine (age 16) and an adult friend, Brittney. A driver in a Ford truck, Robert Gunion, was also going eastbound on Highway 78 at about 50 miles an hour, in traffic he described as heavy.

As Gunion's truck merged out of the number 2 lane into the number 1 fast lane, he noticed in his mirror that the Toyota truck was straddling the two lanes behind him and getting close to his bumper "like he was trying to push me out of the way." Gunion kept going in the fast lane to drive past a motor home in the next lane, so he could move over, but he then saw the Toyota pulling up alongside him on his right, going around 55 to 60 miles per hour. The Toyota's driver jerked his steering wheel to the left and threw some object at Gunion's passenger side window, probably a bottle of some kind. The Toyota's brakes seemed to be locked and it was sliding sideways toward him when its left rear bumper area hit his truck on its right front, forcing him into the center divider wall. When the impact occurred, Gunion looked at the back window of the Toyota and saw a child looking back who seemed to be "just terrorized – just, you know, like scared." The Toyota went sideways as its front hit the center divider, then it spun out and slid to the right shoulder of the highway. Strunk walked across three lanes of traffic toward Gunion's truck. His passengers got out of the Toyota and into a taxi that pulled up behind it. No one reported any injuries.

Gunion stayed in his truck up against the center divider and called the California Highway Patrol (CHP). They ran a traffic break to allow his Ford to be moved to the right shoulder. CHP officer Russell Robertson took a statement from Gunion, who was not hurt and did not appear to be an impaired driver. Robertson then talked to Strunk, who showed him his driver's license and said he had been driving the Toyota. Strunk said that when he entered the freeway, he went all the way over to the fast lane and came upon a slower moving vehicle, the Ford, as it was moving into the fast lane. Strunk explained that he was required to hit his brakes when the Ford changed lanes directly in front of his vehicle. As Strunk went to the right, he passed the Ford and started to move into the fast lane, when it accelerated and cut into his space, causing him to lose control and hit the Ford and the center divider.

As Officer Robertson talked to Strunk, he noticed Strunk's breath

smelled like alcohol, his eyes were watery and he seemed to be speaking in a thick, slurred manner. The officer started asking him introductory type questions about whether he had any illnesses or injuries or if he had consumed any alcohol. First, Strunk said he had a beer at noon, then that he had some whiskey during the next hour, and he was feeling the effects of the drinks a little bit. Robertson started conducting a series of field sobriety tests, some of which showed a degree of impairment and some of which did not. He concluded that Strunk was unable to follow all his directions and gave him a preliminary alcohol screening device test. At 4:34 p.m., Strunk's breath test resulted in a .08% reading, and two minutes later, a reading of .079%.

Officer Robertson checked the status of Strunk's driver's license and found it was suspended for failure to appear or to pay a fine. Strunk said he knew that but thought he still had 30 more days to drive. Robertson decided to arrest Strunk for DUI, based on the various statements taken, Strunk's appearance and his poor performance on the field sobriety tests. At the sheriff's station, further breath tests taken at 5:46 p.m. showed a blood alcohol content of .056, and four minutes later, of .051. Strunk was held in custody.

(Doc. No. 20-1, Lodgment No. 1 at 3-6.)

### **Procedural Background**

On June 22, 2015, the San Diego District Attorney's Office charged Petitioner with thirteen counts relating to the July 10, 2014 and March 27, 2014 incidents.[2] These charges included: felony child abuse, California Penal Code § 273a(a); driving under the influence, California Vehicle Code § 23152(a); driving with a blood alcohol level of .08% or more, California Vehicle Code § 23152(b); driving with a suspended license, California Vehicle Code § 14601.1(a); transportation of a controlled substance, California Health and Safety Code § 11370.2(a); possession for sale of a controlled substance, California Health and Safety Code § 11378; possession of paraphernalia for the use of narcotics, California Penal Code § 11364.1(a); and possession of a controlled substance, California Health and Safety

---

[2]     Counts one through six arose from the July 10, 2014 incident and counts seven through thirteen arose from the March 27, 2014 incident. (Doc. No. 20-1, Lodgment No. 1 at 7.)

4

Code § 11350(a).[3]  (Doc. No. 20-14, Lodgment No. 14 at CT13-19.)

Before trial, Petitioner moved to sever the counts arising from the July 10, 2014 incident from the counts arising from the March 27, 2014 incident.  (Doc. No. 20-1, Lodgment No. 1 at 7.)  The trial court denied the motion, finding that "there was nothing factually about either case that was necessarily inflammatory or unduly prejudicial."  (Id.)  The trial court further stated that it would instruct the jury to analyze each charge independently and to make separate determinations for each one.  (Id.)

Following trial, the jury found Petitioner guilty on several charges.  For the July 10, 2014 incident, Petitioner was convicted of child abuse likely to produce great bodily harm, driving under the influence of alcohol, and driving with a suspended license.[4]  (Doc. No. 20-14, Lodgment No. 14 at CT181-199.)  For the March 27, 2014 incident, Petitioner was convicted of simple possession of methamphetamine, possession of drug paraphernalia, and possession of heroin.[5]  (Id.)  He was sentenced to nine years and four months in prison.  (Id. at 258-59.)

Petitioner appealed his conviction to the California Court of Appeal for the Fourth Appellate District.  (Doc. No. 20-2, Lodgment No. 2.)  On appeal, Petitioner argued that there was insufficient evidence to prove that Petitioner acted with criminal negligence and that the trial court violated Petitioner's due process rights when denying Petitioner's

---

[3]     The prosecution also included several enhancements in its charges.  For counts one, two, and three, the prosecution alleged that Petitioner committed the offenses while he was out of custody on bail, California Penal Code § 12022.1(b).  (Doc. No. 20-14, Lodgment No. 14 at CT13-19.)  For counts four, five, and twelve, the prosecution alleged that Petitioner had been convicted of violating California Vehicle Code § 23152 on two or more prior occasions, meriting enhancements under Vehicle Code §§ 23626 and 23546.  (Id.)  With counts seven and eight, the prosecution alleged that Petitioner had been convicted of violating California Health and Safety Code § 11378 on a prior occasion, meriting enhancement under California Health and Safety Code § 11370.2(c).  (Id.)  Finally, the prosecution alleged that Petitioner had two prior "strike" convictions under California Penal Code §§ 667(b)-(i) and 117012.  (Id.)

[4]     Counts one through six.  (Doc. No. 20-14, Lodgment No. 14 at CT181-189.)

[5]     Counts eleven, thirteen, and a lesser included offense of count eight.  (Doc. No. 20-14, Lodgment No. 14 at CT190-199.)

18-cv-1679-H-JLB

motion to sever the counts relating to the July 10, 2014 incident from the charges arising from the March 27, 2014 incident. (Id.) The state appellate court upheld Petitioner's conviction in a reasoned opinion. (Doc. No. 20-1, Lodgment No. 1.) It held there was sufficient evidence for the conviction because "[t]he evidence showed that Strunk, while driving with a suspended license, crossed a number of lanes of heavy traffic immediately upon entering the freeway, and changed lanes several times in an unexpected manner at a speed in heavy traffic that was likely to create substantial danger" all "while driving under the influence of alcohol" with "three teenage passengers." (Id. at 17.) On the severance claim, the state appellate court held that the trial court did not abuse its discretion by allowing the charges to remain joined because none of the charges were "unusually inflammatory or a very disparate type of offense," the "evidence from each incident was simple and distinct," and "the jury was told to consider them separately." (Id. at 13.) The state appellate court concluded that joinder did not create a "spillover" effect that "deprive[d] the defendant of a fair trial or due process of law" because there were separate sets of eyewitness testimony and field sobriety testing for each incident. (Id. at 14.) Finally, the court considered it unlikely that a spillover effect occurred because Petitioner "obtained acquittals of the March child abuse charges and some of the drug-related charges from that incident." (Id.)

Petitioner filed a petition for review in the California Supreme Court. (Doc. No. 20-3, Lodgment No. 3.) The California Supreme Court summarily denied the petition. (Doc. No. 20-4, Lodgment No. 4.)

Next, Petitioner filed a petition for writ of habeas corpus in the San Diego Superior Court. (Doc. No. 20-5, Lodgment No. 5.) The superior court denied the petition in a written opinion. (Doc. No. 20-6, Lodgment No. 6.) Petitioner also filed a petition for writ of habeas corpus in the California Court of Appeal. (Doc. No. 20-7, Lodgment No. 7.) The California Court of Appeal denied the petition, stating that the petition, "filed two-and-a-half years after he was sentenced and a year after affirmance of the judgment on appeal without any explanation for the delay, is barred as untimely." (Doc. No. 20-8,

Lodgment No. 8 at 2-3.)  The California Court of Appeal also said that two of Petitioner's claims were barred "because they could have been asserted on appeal, but were not."  (Id. at 3.)  The court continued, "[e]ven if Strunk's petition were not procedurally barred . . . none of his claims states a prima facie claim for relief."  (Id.)  Petitioner then filed a petition and supplemental petition for writ of habeas corpus in the California Supreme Court.  (Doc. Nos. 20-9, 20-10, Lodgment Nos. 9, 10.)  The California Supreme Court summarily denied his petition.  (Doc. No. 20-11, Lodgment No. 11.)

On March 11, 2019, Petitioner filed an amended petition for writ of habeas corpus in this Court.  (Doc. No. 15.)  Respondent filed an answer on May 9, 2019.  (Doc. No. 19.)  Petitioner filed a traverse and a request for an evidentiary hearing on September 9, 2019.  (Doc. No. 28.)

Petitioner raises eight claims for relief: (1) insufficient evidence of criminal negligence to support his conviction for child abuse likely to produce great bodily harm; (2) false evidence used to convict Petitioner; (3) ineffective assistance of trial counsel for failing to request certain jury instructions; (4) ineffective assistance of trial counsel for failing investigate and present evidence; (5) a violation of the Sixth Amendment's Confrontation Clause; (6) the trial court failed to instruct the jury on a lesser included offense; (7) the trial court improperly permitted the prosecution to refile misdemeanor charges as felony charges; and (8) the cumulative effect of all the errors in Petitioner's case rendered his trial fundamentally unfair.  (Doc. No. 15 at 29-84.)

Respondent contends that the state court's denial of Petitioner's claims was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  (Doc. No. 19-1 at 10-26, 29.)  Respondent also contends that Petitioner procedurally defaulted on his ineffective assistance of trial counsel claims, failure to instruct on a lesser included offense claim, and improper refiling of charges claim.  (Id. at 7-9.)  Finally, Respondent argues that the lesser included offense and refiled charges claims do not present a federal question.  (Id. at 27-29.)

/ / /

**<u>Discussion</u>**

## I.   **Legal Standards**

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  Under AEDPA, a federal court may not grant a habeas petition regarding any claim adjudicated on the merits in state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d)(1)-(2); <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181 (2011) (citations and quotation marks omitted).  Moreover, "[t]he petitioner carries the burden of proof," <u>id.</u>, though a *pro se* petition for writ of habeas is construed liberally.  <u>Brock v. Weston</u>, 31 F.3d 887, 890 (9th Cir. 1994).

A state court decision is "contrary to" federal law if the state court applied a rule different from the governing law set forth by the United States Supreme Court, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  <u>See</u> <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002).  A state court decision is an "unreasonable application" of federal law if the state court correctly identified the governing legal principle from Supreme Court decisions but applied those decisions to the facts of a particular case in an "objectively unreasonable" manner.  <u>Id.</u>; <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003).  The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims.  <u>See</u> <u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1193-94 (2018); <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 805-06 (1991).  If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an

independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law.  See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); accord Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Clearly established federal law means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Andrade, 538 U.S. at 72.

**A. Petitioner's Habeas Claims**

**1. Sufficiency of the Evidence**

Petitioner contends there was insufficient evidence to support his conviction for child abuse likely to produce great bodily harm.  (Doc. No. 15 at 29-39.)  Specifically, he argues there was insufficient evidence to conclude that he acted with criminal negligence. (Id.)

The Due Process Clause guarantees defendants the right to be convicted only upon proof of every element of a crime beyond reasonable doubt.  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005) (citing In re Winship, 397 U.S. 358, 364 (1970)).  When bringing a habeas petition, however, a petitioner "faces a heavy burden" to establish a due process violation due to insufficient evidence.  Id.  The Ninth Circuit explains:

> First, he must meet the burden under Jackson v. Virginia of showing that whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Second, after the passage of the Antiterrorism and Effective Death Penalty Act of 1996, the standards of Jackson are applied with an additional layer of deference, requiring the federal court to determine whether the decision of the [state court] reflected an unreasonable application of Jackson . . . to the facts of this case.

Maquiz v. Hedgpeth, 907 F.3d 1212, 1217 (9th Cir. 2018) (emphasis in original) (internal citations and quotation marks omitted).  A federal habeas court must "mindful of 'the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review.'"  Juan H., 408 F.3d at 1274

(quoting <u>Wright v. West</u>, 505 U.S. 277, 296-97 (1992)). Deference under AEDPA, however, "does not imply abandonment or abdication of judicial review." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003). While circumstantial evidence can be sufficient to support a conviction, "[s]peculation and conjecture cannot take the place of reasonable inferences and evidence . . . ." <u>Id.</u> at 1218; <u>Juan H.</u>, 408 F.3d at 1279; <u>United States v. Lewis</u>, 787 F.2d 1318, 1323 (9th Cir. 2000).

To determine whether there is sufficient evidence for a conviction, the Court refers to the elements of the crime as defined by state law. <u>See</u> <u>Jackson</u>, 443 U.S. at 324, n.16; <u>Juan H.</u>, 408 F.3d at 1276. California Penal Code § 273a(a) states,

> Any person who, under circumstances or conditions likely to produce great bodily harm or death . . . willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years.

Cal. Penal Code § 273a(a). Section 273a prohibits both "direct" and "indirect" infliction of injury. <u>People v. Valdez</u>, 42 P.3d 511, 516-20 (Cal. 2002). For cases of indirect child abuse, such as "child endangerment" or "willfully permitting situations that imperil children," the necessary mens rea is criminal negligence. <u>Id.</u> Criminal negligence "is the appropriate standard when the act is intrinsically lawful . . . but warrants criminal liability because the surrounding circumstances present a high risk of serious injury." <u>Id.</u> at 518-19. A person acts with criminal negligence when they act with "such a departure from what would be the conduct of an ordinarily prudent or careful person under the same circumstances." <u>Id.</u> at 520.

Viewing the evidence presented at trial in "in the light most favorable to the prosecution," <u>Jackson</u>, 443 U.S. at 319, a rational trier of fact could have found that Petitioner acted with criminal negligence in the July 20, 2014 incident. A witness, Robert Gunion, testified he was going east on Highway 78 in heavy traffic on July 10, 2014 when Gunion saw Petitioner's blue truck behind him as Gunion was merging from the number

18-cv-1679-H-JLB

two lane into the number one lane. (Doc. No. 20-13, Lodgment No. 13 at RT424-25.)[6] Petitioner was traveling at a high rate of speed behind Gunion and was "straddling the [number] 1 and 2 lane" when Petitioner "locked up his brakes" and began "sliding sideways" toward Gunion's vehicle. (Id. at RT425.) Gunion tried to get out of the number one lane and merge into the number two lane, but before he could merge, Petitioner "darted between [Gunion] and [a] motor home, pulled up alongside [Gunion]," and "threw an object" at Gunion's passenger window. (Id. at RT426.) Petitioner then jerked his car toward Gunion's, hit the right front bumper of Gunion's truck, and "forced [Gunion] into the center divide." (Id. at RT426-27.) After the collision, Petitioner's car slid sideways into the center divider and traveled across four lanes of traffic onto the right shoulder. (Id. at RT427-28.) Gunion testified he saw one of the teenaged girls in the back seat looking at him with a "terrorized" look on her face. (Id. at RT427.) The officer who responded to the traffic accident also testified that Petitioner's driving license had been suspended, and the officer arrested Petitioner because he displayed "objective symptoms of intoxication" and "signs of impairment," such as "the odor of alcohol emitting from his breath" and "thick, slurred speech." (Id. at RT346.)

Petitioner argues that there was "no evidence presented that Petitioner was speeding; no evidence presented that Petitioner failed to use his turn signals; no evidence that his one lane change was unexpected; no evidence presented that crossing [two] lanes of traffic upon entering the freeway is illegal." (Doc. No. 15 at 38.) But Gunion's testimony does provide evidence that Petitioner made unexpected lane changes and drove too quickly to be navigating the highway safely. Though Petitioner argues that "the most Petitioner could have been traveling is 60 mph, which is below the limit of 65 mph" (id. at 35), driving within the speed limit may still be dangerous if excessive given the flow of traffic at the time. See Cal. Vehicle Code § 22350 ("No person shall drive a vehicle upon a highway at

---

[6] The number one lane is the fast lane, the lane furthest to the left on the freeway. (Doc. No. 20-13, Lodgment No. 13 at RT425.)

a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the high way, and in no event at a speed which endangers the safety of persons or property."). Similarly, crossing two lanes of traffic upon entering the freeway may not be illegal per se, but it can constitute reckless driving when taken in context with other unsafe actions. <u>Valdez</u>, 42 P.3d at 518-19 ("intrinsically lawful" acts may still "warrant[] criminal liability because the surrounding circumstances present a high risk of serious injury"). Petitioner also disputes the veracity of Gunion's testimony (Doc. No. 15 at 34-37), and specifically challenges the "allegation that something was thrown" as a "complete fabrication."[7] (<u>Id.</u> at 36.) But even setting aside the allegation that Petitioner threw an object at Gunion's vehicle, the remaining evidence is sufficient for the jury to conclude that Petitioner drove recklessly while under the influence of alcohol and that Petitioner acted in "a gross departure from the way an ordinarily careful person would act in the same situation." (<u>See</u> Doc. No. 20-14, Lodgment No. 14 at CT159.)

Reviewing these facts "in the light most favorable to the prosecution," <u>Jackson</u>, 443 U.S. at 319, a jury could reasonably credit the rest of Gunion's testimony, and its characterizations of Petitioner's driving, to conclude that Petitioner was driving with criminal negligence. A jury, concluding that Petitioner drove recklessly while intoxicated with his child and her friends in the car, could reasonably conclude that Petitioner acted with "disregard for human life or indifference to the consequences of his . . . acts."[8] (<u>See</u>

_____

[7]     Petitioner asserts that this testimony was false because cross-examination showed an inconsistency when Gunion testified that he reported the thrown object to Officer Robertson, but Officer Robertson testified that he had not been told about any object being thrown. (Doc. No. 15 at 36; Doc. No. 20-13, Lodgment No. 13 at RT368-69, RT430). The fact that this detail might not have been reported to the police, however, does not necessarily mean the testimony is false.

[8]     It does not appear unusual for child abuse charges to be brought based on a defendant's reckless driving under the influence. <u>Cf., e.g.</u>, <u>Celaya v. Superior Court of California</u>, No. 17CV552 JAH (BGS), 2018 WL 1108732, at *1-2 (S.D. Cal. Feb. 28, 2018), <u>report and recommendation adopted</u>, No. 17CV552 JAH (BGS), 2018 WL 3328426 (S.D. Cal. July 6, 2018); <u>In re Julien H.</u>, 208 Cal. Rptr. 3d 213, 215 (Cal. Ct. App. 2016). Defendants in California have also been convicted of child abuse due to reckless driving. <u>See, e.g.</u>, <u>People v. Jimenez</u>, 243 Cal. Rptr. 3d 786, 791-93 (Cal. Ct. App. 2019).

18-cv-1679-H-JLB

Doc. No. 20-14, Lodgment No. 14 at CT159.)  Further, a jury could reasonably conclude that "a reasonable person would have known" that driving recklessly on the freeway in heavy traffic at a high rate of speed while intoxicated "would naturally and probably result in harm to others."  (Id.)  Though Petitioner argues that nobody was physically injured in the accident (Doc. No. 5 at 37), California Penal Code § 273a does not limit child abuse to conduct resulting in physical injury.  It also prohibits a person from placing a child "in a situation where his or her health is endangered."  Cal. Pen. Code § 273a.  Thus, a rational jury could conclude that, even if the parties were lucky this time, Petitioner's actions were risky enough to constitute child endangerment likely to produce great bodily harm. Affording due deference to the state courts and jury, the evidence at Petitioner's trial was sufficient to sustain his conviction.  The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established law.  Bell, 535 U.S. at 694.

### 2. False Evidence

Petitioner claims that false evidence was used to convict him.  (Doc. No. 15 at 39-43.)  He contends that his convictions for the child abuse charges, which occurred during the July 10, 2014 incident, were based solely on the crimes alleged to have taken place during the March 27, 2014 incident.  Because the jury acquitted him of the March 27, 2014 crimes, Petitioner claims his convictions for the July 20, 2014 crimes was based on false evidence.  (Id.)

Petitioner raised this claim in the supplemental petition for writ of habeas corpus he filed in the California Supreme Court.  (Doc. No. 20-10, Lodgment No. 10 at 9-11.)  The California Supreme Court summarily denied the petition.  (Doc. No. 20-11, Lodgment No. 11.)  This Court therefore independently reviews the record to determine if the state court's denial of the claim was contrary to, or an unreasonable application of, clearly established law.  Himes, 336 F.3d at 853.

Petitioner does not state a valid claim for habeas relief due to false evidence.  Under the Fourteenth Amendment, a petitioner may obtain habeas relief for the state's use of false

evidence if: "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." Reis-Campos v. Biter, 832 F.3d 968, 976 (9th Cir. 2016) (internal citations and quotations omitted). If there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury," the conviction must be set aside. Id. at 1076 (quoting Hayes, 399 F.3d at 985). But Petitioner's argument does not identify evidence that was false. A jury's acquittal does not mean that the evidence presented by the prosecution was false. Rather, it means the jury concluded that there was insufficient evidence, to find beyond a reasonable doubt, that Petitioner was guilty of several charges associated with the March 27, 2014 incident. Petitioner offers no other reasons to suggest that any evidence surrounding the March 27, 2014 incident would be false.

Petitioner also argues that the evidence from the March incident was prejudicial propensity evidence and that the charges for the March and July incidents should have been severed to avoid unfair prejudice. (See Doc. No. 15 at 42) ("The prejudicial effect of the court admitting these cases to be joined cannot be overstated.") But claims of improper joinder do not qualify for habeas relief under § 2254. Prior petitioners have cited United States v. Lane to argue that improper joinder "would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." See, e.g., Runningeagle v. Ryan, 686 F.3d 758, 776 (9th Cir. 2012) (quoting 474 U.S. 438, 446 n.8 (1986)). Prior petitioners also cited Zafiro v. United States to argue that Criminal Rule of Procedure 14 requires severance "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants." Runningeagle, 686 F.3d at 776 (quoting Zafiro v. United States, 506 U.S. 534, 539 (1993)).[9] However, "[n]either decision is 'clearly established Federal law'

---

[9] Though Zafiro raised Federal Criminal Rule of Procedure 14 in the context of two codefendants with mutually antagonistic defenses, 605 U.S. at 534, and prior habeas petitioners have cited Zafiro in the same context, see, e.g., Runningeagle v. Ryan, 686 F.3d 758, 776 (9th Cir. 2012), Rule 14 also governs "joinder of offenses." Fed. Crim. R. P. 14(a).

sufficient to support a habeas challenge under § 2254." Id. at 777. Collins v. Runnels observed that Zafiro "only applies to federal and not state court trials," so it does not provide grounds for § 2254 habeas relief. 603 F.3d 1127, 1132 (9th Cir. 2010). Collins also held that the footnote in Lane discussing when misjoinder rises to the level of constitutional violation is "dicta" and "did not set forth the governing legal principle in Lane." Collins, 603 F.3d at 1132. Thus, neither Lane nor Zafiro provide Petitioner grounds for § 2254 relief. Runningeagle, 686 F.3d at 777.

In any event, improper joinder of two claims in the same trial "does not, in itself, violate the Constitution." Lane, 474 U.S. at 446 n.8. The state appellate court properly concluded that the trial court did not abuse its discretion by allowing the charges to remain joined. (Doc. No. 20-1 at 13.) The state appellate court observed that the "[t]he evidence from each incident was simple and distinct" and that there was "no need or opportunity created for the jury to fill in the blanks from one case to the other." (Id. at 13-14.) For example, defense counsel, in cross-examination, demonstrated that no drugs were involved in the July traffic incident. (Doc. No. 20-13, Lodgment No. 13 at RT369-70.) As the state appellate court observed, "[s]ince Petitioner obtained acquittals of the March child abuse charges and some of the drug-related charges from that incident, his argument that he was prejudiced overall by the joinder of the charges loses a great deal of its force." (Doc. No. 20-1, Lodgment No. 1 at 14.) Thus, even if the Court reads Petitioner's false evidence claim as a claim asserting unfair joinder, and even assuming that unfair joinder could create grounds for habeas relief, Petitioner's claim lacks merit.

### 3. Ineffective Assistance of Trial Counsel for Failure to Request Jury Instructions

Petitioner asserts that trial counsel was ineffective because of failure to request jury instructions. First, Petitioner argues counsel should have requested jury instructions relating to California Evidence Code § 403, which addresses the "Determination of Foundational and Other Preliminary Facts Where Relevancy, Personal Knowledge or Authenticity is Disputed." (Doc. No. 15 at 46.) Second, Petitioner argues counsel should

have asked for instructions "pertaining to evidence of other crimes," specifically "CALJIC Jury Instruction §48:25," which Petitioner claims to provide the following:

> Evidence has been introduced for the purpose of showing that the defendant committed a crime other than for which he is on trial. Before you may consider this evidence, you must first determine the truth of [whether he committed a DUI with minors in the vehicle on March 27, 2014].

> If you determine this fact to be true, such evidence may be considered by you for the limited purpose of determining if it tends to show [that the defendant acted with criminal negligence on July 20, 2014].

> If you determine the fact of [whether defendant committed a DUI with minors in the vehicle on March 27, 2014] not to be true, you must disregard this evidence and not consider it for any purpose.

(Doc. No. 15 at 46.) Third, Petitioner faults counsel for failing to request a specific instruction that defined the term "negligence." (Doc. No. 15 at 49-52.)

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 688 (1984); Ramirez v. Ryan, 937 F.3d 1230, 1243 (9th Cir. 2019). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Petitioner must also show he was prejudiced by counsel's errors. Id. at 694. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). Further, Strickland requires that "[j]udicial scrutiny of counsel's performance . . . be highly deferential." Strickland, 466 U.S. at 689. There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 686-87. The Court need not address both the deficiency prong and the prejudice prong if a claimant fails to prove either one. Id. at 697.

Here, none of the instructions raised by Petitioner apply or would have changed the

16

outcome of Petitioner's case, so counsel did not err by failing to request these instructions. First, California Evidence Code § 403(c)(1) is inapplicable to Petitioner's case. Section 403(a) lists situations where a preliminary fact must be determined by the jury: relevance, personal knowledge, and authenticity of a statement or conduct. Cal. Evid. Code § 403(a). None of these evidentiary challenges were at issue in Petitioner's trial. Rather, Petitioner believes that the crimes alleged to have occurred on March 27, 2014 were "preliminary facts" that the jury had to find true before they could convict him of the July 10, 2014 crimes. (Doc. No. 15 at 46-48.) This is not the case. The events associated with the March 27, 2014 incident and the July 20, 2014 incident were charged as separate crimes which the jury was required to adjudicate separately. The trial judge correctly instructed the jury that "[e]ach of the counts charged in this case is a separate crime [and] [y]ou must consider each count separately." (Doc. No. 20-14, Lodgment No. 14 at CT172.)

Second, the jury instruction on evidence of other crimes does not apply to Petitioner's case. The Court did not locate a CALJIC instruction numbered "48:25." The closest language is in CALJIC No. 2.50, "Evidence of Other Crimes." CALJIC No. 2.50 provides:

> Evidence has been introduced for the purpose of showing that the defendant committed a crime other than that for which he is on trial.
>
> This evidence, if believed, may not be considered by you to prove that defendant is a person of bad character or that he has a disposition to commit crimes. It may be considered by you only for the limited purpose of determining if it tends to show:
>
> A characteristic method, plan or scheme in the commission of criminal acts similar to the method, plan or scheme used in the commission of the offense in this case which would further tend to show or the identity of the person who committed the crime, if any, of which the defendant is accused or a clear connection between the other offense and the one of which the defendant is accused so that it may be inferred that if defendant committed the other offenses defendant also committed the crimes charged in this case.
>
> For the limited purpose for which you may consider such evidence, you must

17

weigh it in the same manner as you do all other evidence in the case.

CALCRIM No. 2.50. Both CALJIC No. 2.50 and the "48:25" language Petitioner suggests counsel should have requested apply only when "[e]vidence has been introduced for the purpose of showing that the defendant committed crimes other than that for which he is on trial." But Petitioner was on trial for the crimes associated with both the March 27, 2014 incident and the July 20, 2014 incident. Thus, these instructions do not apply to his case.

Third, the failure of Petitioner's counsel to request negligence instruction CALJIC No. 8.94 did not prejudice Petitioner. Petitioner argues counsel failed to request that CALJIC No. 8.94 to instruct the jury that merely driving under the influence is insufficient, by itself, to constitute gross or criminal negligence[10] for the charge of vehicular manslaughter, and that without a specific instruction, the jury would not have been able to determine whether he was criminally negligent. (Doc. No. 15 at 49-52.) Here, counsel's failure to request this instruction did not prejudice Petitioner because the trial court properly defined the element of criminal negligence, and the record does not suggest that the jury convicted Petitioner of child abuse likely to cause great bodily harm solely because he was driving under the influence.

Petitioner's counsel did not err by failing to request CALJIC No. 8.94 because the trial court correctly defined criminal negligence in its jury instructions. Criminal negligence is "aggravated, culpable, gross, or reckless . . . conduct . . . that is such a departure from what would be the conduct of an ordinarily prudent or careful person under the same circumstances as to be incompatible with a proper regard for human life . . . ." People v. Valdez, 42 P.3d 511, 514 (Cal. 2002) (internal quotations and brackets omitted).

---

[10] CALJIC No. 8.94 applies to vehicular manslaughter, not child abuse likely to cause great bodily harm. Still, CALJIC No. 8.94 could be relevant because it applies to vehicular manslaughter's element of gross negligence, and California treats gross and criminal negligence identically. See People v. Penny, 285 P.2d 926, 932-37 (Cal. 1955); CALCRIM 3.36.

Consistent with this definition, the trial court instructed the jury that a person acts with criminal negligence when: (1) the person acts "in a reckless way that is a gross departure from the way an ordinarily careful person would act in the same situation"; (2) "the person's acts amount to disregard of human life or indifference to the consequences of his or her actions"; and (3) "a reasonable person would have known that acting in that way would naturally and probably result in harm to others." (Doc. No. 20-13, Lodgment No. 13 at RT507-08.)

Additionally, the record does not indicate that the jury convicted Petitioner of child abuse solely because it found he was driving under the influence. As discussed above, the prosecution presented sufficient evidence for the jury to conclude that Petitioner drove recklessly while under the influence. (See Doc. No. 20-13, Lodgment No. 13 at RT424-34, RT345-46, RT358-64.) In closing, the prosecution pointed to this evidence as basis for to convict Petitioner for child abuse, referring to Gunion's testimony describing "the erratic and dangerous and driving of Mr. Strunk." (Doc. No. 20-13, Lodgment No. 13 at RT527; see also id. at RT573.) Further, the prosecution also argued that Petitioner's decision to drive with minors in his car constitutes criminal negligence because Petitioner should have known the risks of such conduct from his March arrest.[11] (Id. at RT573.)

Since the court correctly defined criminal negligence, and the record does not suggest that the jury convicted Petitioner of child abuse solely because Petitioner drove under the influence, there was no "strong need" for the CALJIC No. 8.94 instruction and therefore no substantial likelihood that requesting the instruction would have produced a different result. United States v. Bosch, 914 F.2d 1239, 1247 (9th Cir. 1990); see also Harrington, 562 U.S. at 112. Thus, counsel was not constitutionally deficient by failing to request these instructions, and Petitioner's claim lacks merit. See Strickland, 466 U.S. at

---

[11] Warnings not to drive while intoxicated are relevant to determining whether a person acts with gross negligence. See, e.g., People v. Von Staden, 241 Cal. Rptr. 523, 527 (Cal. Ct. App. 1987) (finding gross negligence where one factor was how defendant "ignored his host's urging that he not drive while intoxicated").

694; Liska v. Stewart, 62 F. App'x 145, 147 (9th Cir. 2003) ("[Petitioner] also failed to demonstrate prejudice by his counsel's failure to submit jury instructions as he did not demonstrate that there was an instructional error or that there was a reasonable probability of a different result had his counsel submitted jury instructions.").

### 4. Ineffective Assistance of Trial Counsel for Failure to Investigate and Present Evidence

Petitioner argues counsel was ineffective because he failed to investigate and present evidence that Petitioner suffered from cirrhosis of the liver and hepatitis C which prevented him from properly metabolizing alcohol. (Doc. No. 15 at 53-59.) This evidence, Petitioner claims, would have called into question the prosecution's expert testimony relying on the "reverse extrapolation theory of alcohol elimination" to establish that Petitioner's blood alcohol level was above the legal limit at the time he was driving. (Id.)

But Petitioner cannot claim failure to investigate because Petitioner's counsel did investigate the claim and reasonably decided not to pursue it. Counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. Courts must afford such decisions "a heavy measure of deference" and assess them "for reasonableness in all the circumstances." Id. "The duty to investigate does not require 'defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste . . . .'" Murray v. Schriro, 882 F.3d 778, 824 (9th Cir. 2018) (quoting Rompilla v. Beard, 545 U.S. 374, 383 (2005)). Here, Petitioner's trial counsel explored the possibility of using Petitioner's hepatitis diagnosis and cirrhosis of the liver as a defense to the driving under the influence charges. Exhibit F of the petition contains notes from his trial attorney's file. According to the notes, trial counsel spoke to an expert, Dr. Alan Barbour, about how hepatitis and cirrhosis of the liver would affect Petitioner's alcohol absorption rates. (Id. at 113.) Dr. Barbour informed counsel "there was no way to say how it would affect the absorption of the alcohol because even if they have liver damage they may have further

enzymes produced so [I cannot] opine as to that." (Id.) The expert provided adequate explanation to end the inquiry, since he pointed out that the body could compensate for the damage through the production of enzymes, meaning that "there was no way to say how it would affect the absorption of the alcohol." (Id.) Thus, Petitioner's trial counsel reasonably decided not to pursue the inquiry further, and Petitioner's claim does not provide a basis for habeas relief.

### 5. Ineffective Assistance of Appellate Counsel[12]

Petitioner argues that appellate counsel was deficient due to counsel's decision not to raise claims on appeal challenging the trial court's failure to instruct on a lesser included offense and the trial court's decision to permit the prosecution to refile misdemeanor charges as felonies. (See Doc. No. 15 at 22-28.) But the appellate attorney, deciding not to raise those claims, exercised reasonable professional judgment. The record contains two letters from Petitioner's appellate counsel explaining that she decided not to raise those arguments for tactical reasons. In the first letter, Petitioner's counsel explains that she "raised the two issues in your case [she] believed had the best chance of success for [Petitioner]," and if she "were to include borderline frivolous arguments among very good arguments," she "wouldn't have any credibility with the justices . . . at oral argument." (Doc. No. 15 at 163.) In the second letter, Petitioner's appellate counsel addresses Petitioner's claim that the trial judge should have instructed the jury about attempted child endangerment and DUI with minors. She writes, "I don't believe that either of those offenses are lesser-included offenses to the charge of felony child abuse. If I did, I would have raised them on appeal." (Id. at 170.)

Upon review of the record, there is insufficient evidence to conclude that counsel

---

[12]   Though Petitioner does not argue ineffective assistance of appellate counsel as one of his grounds for habeas relief, in opposing procedural default Petitioner does claim that "[a]ppellate counsel and the appellate system failed to operate properly and were not sufficient to allow Petitioner to adequately present his grievances for judicial review on direct appeal." (Doc. No. 15 at 23.) Thus, the Court construes his petition liberally to assert a claim of ineffective assistance of appellate counsel. See Brock v. Weston, 31 F.3d 887, 890 (9th Cir. 1994).

acted objectively unreasonably. See Strickland, 466 U.S. at 689. Though Petitioner's appellate counsel did not specifically address Petitioner's claim that the prosecution improperly refiled his misdemeanor charge, she had already explained that she selected the arguments she presented on appeal based on tactical reasons, choosing the arguments she thought strongest. (Doc. No. 15 at 163.) See Yarborough v. Gentry, 540 U.S. 1, 5 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that [s]he did so for tactical reasons rather than through sheer neglect."). Thus, appellate counsel's decision not to raise these claims is a reasonable tactical choice that "falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Accordingly, Petitioner's argument that appellate counsel was deficient does not merit habeas relief.

### 6. Confrontation Clause

Petitioner contends his Sixth Amendment rights were violated because the trial court sustained a hearsay objection barring Petitioner from cross-examining Officer Russell Robertson on information the officer acquired from Petitioner's fourteen-year-old daughter, S., when the officer arrived on the scene of the July incident.[13] (Doc. No. 5 at 60-67.) Petitioner claims this inability to cross examine Officer Robertson about S.'s statements violated his Sixth and Fourteenth Amendment rights. (Doc. No. 5 at 60-67.) He also contends the ruling prevented him from presenting the theory of his defense. (Id. at 66-67.)

Defendants have a Sixth Amendment right to confront and cross-examine the witnesses testifying against them at trial. U.S. Const. amend. VI. Under the Sixth Amendment's Confrontation Clause, testimonial evidence is inadmissible if the witness "is

---

[13] In Petitioner's trial, Officer Robertson was asked on cross examination, "[s]o you received [a] drinking pattern, and then you also said on direct you received a different drinking pattern from the daughter S[.] about when Mr. Strunk drank; correct?" (Doc. No. 20-13, Lodgment No. 13 at RT366.) Officer Robertson answered, "[y]es." (Id.) When defense counsel asked Officer Robertson what "drinking pattern" S. had given him, the prosecution objected on hearsay grounds and the trial court sustained the objection. (Id.)

unavailable" and defendant did not have "a prior opportunity to cross-examine" the witness. Crawford v. Washington, 541 U.S. 36, 59, 68 (2001). Statements given to the police are testimonial if there is no ongoing emergency and the "primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal punishment." Davis v. Washington, 547 U.S. 813, 822 (2006).

S.'s statement to Officer Robertson was testimonial. It was made well after the accident had ended and Officer Robertson had secured the scene of the accident. (Id. at RT320-24, RT346.) Further, Officer Robertson solicited the statement to investigate the cause of the accident. (Id. at RT346.) See also People v. Cage, 155 P.3d 205, 207, 217 (Cal. 2007) (fifteen-year-old's statement to deputy in hospital waiting room is testimonial).

However, S. was not an unavailable witness. Though Petitioner understandably did not want to subject his daughter to testifying in court (see Doc. No. 15 at 61), this does not qualify her as an unavailable witness under the rules of evidence. See California Evidence Code § 240(a); cf. Fed. R. Evid. 804(a). Because S. was not unavailable, Petitioner had the ability to present her testimony in court, so his inability to cross-examine the officer about S.'s statement does not violate the Confrontation Clause. Crawford, 541 U.S. at 59, 68.

Moreover, Petitioner alleges he was prevented from presenting his defense by the court's hearsay ruling. (Doc. No. 15 at 66-67.) In defense to the July 10, 2014 driving under the influence charges, Petitioner claims the calculations to determine his blood alcohol level at the time of driving were flawed because they inaccurately assumed when Petitioner had his last alcoholic drink. (Doc. No. 20-13, Lodgment No. 13 at RT559-60.) Petitioner argues that testimony by S. would have supported his contention that he was still absorbing alcohol when he was tested and therefore the reverse extrapolation the expert used to estimate his blood alcohol level would have been inaccurate. (See id. at 483.) But as noted above, nothing legally barred Petitioner from putting S. on the stand. Thus, there was no Sixth or Fourteenth Amendment violation, and the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme

Court law.  <u>Bell</u>, 535 U.S. at 694.

## 7. Trial Court's Failure to Instruct on a Lesser Included Offense

Petitioner claims the trial court erred by failing to instruct the jury on DUI with a minor in the vehicle as a lesser included offense of felony child endangerment.  "[T]he failure of a state court to instruct on a lesser offense" in a non-capital case "fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." <u>Solis v. Garcia</u>, 219 F.3d 922, 929 (9th Cir. 2000) (quoting <u>Bashor v. Risley</u>, 730 F.2d 1228 (9th Cir.1984)).  Such a claim may be raised in "some [habeas] cases" concerning "the defendant's right to adequate jury instructions on his or her theory of the case." <u>Id.</u>  But even if Petitioner had based his theory of the case on his conduct qualifying as a lesser included offense, the statute he refers to provides an enhancement, not a lesser-included offense.  <u>See</u> <u>Cal. Vehicle Code</u> § 23572(a) ("If any person is convicted of a violation of Section 23152 and a minor under 14 years of age was a passenger in the vehicle at the time of the offense, the court shall impose the following penalties in addition to any other penalty prescribed.")  Thus, Petitioner's lesser included offense claim does not provide grounds for habeas relief.

## 8. Trial Court Permitting Misdemeanor Charges to be Refiled as Felonies

Petitioner claims the trial court "acted in excess of its jurisdiction" by allowing the prosecutor to refile misdemeanor charges from the July 2014 incident as felony charges. (Doc. No. 15 at 73.)  Petitioner argues that the refiling of the charges violates Cal. Penal Code § 1387(a), violated his speedy trial rights, and amounted to vindictive prosecution. (<u>Id.</u> at 73, 78-80.)

The California Penal Code § 1387(a) claim does not present a federal question subject to habeas review.  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991) (internal citations and quotations omitted).  Petitioner mistakenly cites cases addressing state habeas claims, not federal ones.  (<u>See</u> Doc. No. 15 at 73.)  Though

Petitioner disagrees with the trial court's interpretation of Cal. Penal Code § 1387(a), "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

Petitioner argues that the state law at issue has created a "liberty interest" under the Due Process Clause, citing Swarthout v. Cooke, 562 U.S. 216, 220 (2011). But the liberty interest created, if any, does not entitled Petitioner to a substantive outcome. Id. Rather, when a state "creates a liberty interest, the Due Process requires fair procedures for its vindication." Swarthout, 562 U.S. at 220. Such procedures required are "minimal." Id. For instance, a "a prisoner subject to a parole statute . . . received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied." Id. Petitioner explains that he "argued during a 1387 Motion that the July 10th misdemeanor charges were barred from successive prosecution under Penal Code § 1387's one dismissal rule . . . ." (Doc. No. 15 at 74; id., Ex. MH at RT56-57, 63.) Thus, Petitioner had opportunity to be heard, and the trial court explained its reasoning for why it denied his claim. (Id., Ex. MH at RT74-77.) Petitioner does not identify any procedural inadequacy that would raise a federal question. Accordingly, Petitioner's argument does not present a due process claim meriting habeas relief. See Estelle, 502 U.S. at 67.

Petitioner also argues the refiling of charges circumvented his speedy trial rights by restarting the clock for his trial. The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.[14] When enforcing the right to a speedy trial, the Supreme Court "has rejected any rigid approaches or clearly defined rules." United States v. Myers, 930 F.3d 1113, 1119 (9th Cir. 2019) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). Instead, courts

---

[14] Though Petitioner frames his argument in terms of California Penal Code § 1387, he does reference his speedy trial rights and the Sixth Amendment in this claim for relief. (See Doc. No. 15 at 78, 80.)

apply "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." Id.

Here, Petitioner's speedy trial rights were not violated because refiling the charges simply reset the clock for trial and caused no prejudice to Petitioner. The trial court ruled on the issue in a pretrial hearing and found that refiling the charges would not prejudice Petitioner. (See Doc. No. 15, Ex. MH at RT77.) Though Petitioner argues that he spent "[ten] months in custody," these ten months resulted because Petitioner had given a time waiver. (See Doc. No. 15 at 78.) Once Petitioner withdrew his waiver, the only delay from refiling would have been the subsequent sixty days added before trial when the prosecutor refiled the child abuse charges as felonies. See Cal. Penal Code § 1382(a)(2). But Petitioner's withdrawal of his time waiver would have reset the clock for trial regardless, Cal. Penal Code § 1382(a)(3)(A), and the only effect of the prosecutor refiling the child abuse charges as felonies is the difference in time between trial for felonies and trial for misdemeanors. Compare Cal. Penal Code § 1382(a)(2) with Cal. Penal Code § 1382(a)(3).[15] Additionally, under federal law, prosecutors regularly refile charges, and the subsequent reset of the trial clock under the Speedy Trial Act does not violate the Sixth Amendment right to a speedy trial. See United States v. Barraza-Lopez, 659 F.3d 1216, 1219-20 (9th Cir. 2011). Thus, Petitioner's speedy trial claim lacks merit.

Finally, Petitioner argues that the prosecution refiled the charges to punish him for refusing the initial plea bargain they offered. A party may show vindictive prosecution "by producing direct evidence of the prosecutor's punitive motivation" or circumstances establishing a "reasonable likelihood of vindictiveness." United States v. Brown, 875 F.3d 1235, 1240 (9th Cir. 2017) (internal citations and quotation marks omitted). "As a matter

---

[15] Under Cal. Penal Code § 1382(a)(3), a misdemeanor case must be brought within thirty days of arraignment. If a defendant enters a general waiver of this speedy trial light, but later withdraws it, "the defendant shall be brought to trial within [thirty] days of the date of that withdrawal." Cal. Penal Code § 1382(a)(3)(A). Since refiling the misdemeanors as felony charges meant that the prosecutor had to bring Petitioner to trial within sixty days of arraignment, Cal. Penal Code § 1382(a)(2), Petitioner's trial was delayed, at most, by thirty days.

of law, the filing of additional charges to make good on a plea bargaining threat . . . will not establish the requisite motive, however." United States v. Kent, 649 F.3d 906, 914 (9th Cir. 2011). "For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." United States v. Goodwin, 457 U.S. 368, 380 (1982); see also Brown, 875 F.3d at 1240. Here, Petitioner's only basis for claiming vindictive prosecution is the fact that the prosecution refiled charges as soon as he rejected the prosecutor's plea offer. (See Doc. No. 15 at 78.) That claim is not enough to establish vindictive prosecution, Kent, 649 F.3d at 914, so it does not provide grounds for habeas relief.

### 9. Cumulative Error

"[T]he combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal." Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 298 (1973)); see also Whelchel v. Washington, 232 F.3d 1197, 1212 (9th Cir. 2000); United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996) (where no single trial error in isolation is sufficiently prejudicial to warrant habeas relief, "the cumulative effect of multiple errors may still prejudice a defendant"). Where "there are a number of errors at trial, 'a balkanized, issue-by-issue harmless error review' is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial against the defendant." Frederick, 78 F.3d at 1381 (quoting United States v. Wallace, 848 F.2d 1464, 1476 (9th Cir. 1988)). Cumulative error warrants habeas relief when the combined effect of the errors had a "substantial and injurious effect or influence on the jury's verdict." Parle, 505 F.3d at 927 (quoting Brecht, 507 U.S. at 637).

None of Petitioner's claims present constitutional error. Because no constitutional errors occurred, no cumulative error is possible. Hayes v. Ayers, 632 F.3d 500, 523-24 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred,

no cumulative prejudice is possible."). Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established law, and Petitioner is not entitled to habeas relief. <u>Bell</u>, 535 U.S. at 694.

### B. Procedural Default

Procedural default is an affirmative defense in federal habeas proceedings. <u>Bennett v. Mueller</u>, 322 F.3d 573, 586 (9th Cir. 2003). To claim procedural default, the state bears the burden of proving the "existence of an independent and adequate state procedural ground . . . ." <u>Id.</u> A state procedural rule is "independent" if the state law is not interwoven with federal law. <u>Michigan v. Long</u>, 463 U.S. 1032, 1040-41 (1983); <u>Nitschke v. Belleque</u>, 680 F.3d 1105, 1109 (9th Cir. 2012). A state rule is "interwoven" with federal law if the state's application of the procedural bar depends on an antecedent ruling on federal law, such as a violation of federal constitutional law. <u>See</u> <u>Foster v. Chatman</u>, 136 S. Ct. 1737, 1746 (2016); <u>Ake v. Oklahoma</u>, 470 U.S. 68, 75 (1985). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" <u>Walker v. Martin</u>, 562 U.S. 307, 316 (2011) (quoting <u>Beard v. Kindler</u>, 558 U.S. 53, 60-61 (2009)).

If the state demonstrates an independent and adequate state ground for procedural default, a federal court will not review the claim unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that "failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). A petitioner may show cause for default if they can demonstrate some "objective factor" that precluded them from raising the claims in state court, such as interference by state officials or constitutionally ineffective counsel. <u>Davila v. Davis</u>, 137 S. Ct. 2058, 2064-65 (2017); <u>McClesky v. Zant</u>, 499 U.S. 467, 493-94 (1991). Additionally, a petitioner may show prejudice if there is "actual harm resulting from the alleged error." <u>Vickers v. Stewart</u>, 144 F.3d 613, 617 (9th Cir. 1998). For the "miscarriage of justice" exception, a petitioner can excuse a procedural default only if he or she can show that "a constitutional violation has probably resulted in

the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995); <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 383-84 (2013). "'Actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998); <u>Merrero v. Ives</u>, 682 F.3d 1190, 1193 (9th Cir. 2012).

Respondent argues that Petitioner's ineffective assistance of counsel claims, failure to instruct on a lesser included offense claim, and refiling of charges claim are procedurally defaulted because the state court denied them as untimely. (Doc. No. 19-1, Lodgment 19 at 14.) Respondent also argues that Petitioner's ineffective assistance of trial counsel claims are procedurally barred because the state court found that Petitioner did not raise them on appeal despite having opportunity to do so. (Doc. No. 19-1, Lodgment No. 19 at 7-9.)

Because the Court determines that Petitioner is not entitled to relief on the merits of his habeas claims, the Court need not reach whether the claims in question are procedurally barred from habeas review. <u>See</u> <u>Lambrix v. Singletary</u>, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be. Judicial economy might counsel giving the [merits] question priority, for example, if it were easily resolvable against the habeas petitioner . . . ."); <u>Ayala v. Chappell</u>, 829 F.3d 1081, 1096 (9th Cir. 2016); <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same.").

## <u>Conclusion</u>

For the foregoing reasons, the Court denies the amended petition for writ of habeas corpus. Additionally, the Court denies Petitioner's request for an evidentiary hearing because Petitioner had a full trial and the Court can resolve Petitioner's claims by reference to the state court record. <u>Cullen v. Pinholster</u>, 563 U.S. 170, 183 (2011); <u>Sully v. Ayers</u>, 725 F.3d 1057, 1075 (9th Cir. 2013) ("[A]n evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief."). Finally, because the Court

concludes that reasonable jurists would not find the Court's procedural analysis debatable or wrong, and Petitioner has not shown a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); see Slack v. McDaniel, 529 U.S. 473, 485 (2000).

**IT IS SO ORDERED.**

DATED: November 1, 2019

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT